**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **TAMMARA MOORE**, individually and on behalf of all others similarly situated, | : | Case No: |
| Plaintiff, | : | Hon. |
| v. | : | Mag. |
| **ADP, INC.**, Defendant. | : | |

**COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY DEMAND**

Plaintiff, Tammara Moore (Plaintiff"), hereby brings this Collective and Class Action Complaint against Defendant ADP Inc. ("ADP" or "Defendant"), and states as follows:

**INTRODUCTION**

1. This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated persons employed by Defendant, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., Fed. Civ. P. 23, the Arizona Minium Wage Act, A.R.S. §§ 23-363, *et seq*. ("AMWA"), the Arizona Wage Act, A.R.S. §§ 2-350, *et seq*. ("AWPA"), and common law.

2. Defendant is one of the largest payroll companies in the United States serving over 1,100,000 clients.[1] Defendant is "a comprehensive global provider of cloud-based human capital management (HCM) solutions that unite[s] HR, payroll, talent, time, tax and benefits administration and a leader in business outsourcing services, analytics and compliance expertise."[2]

3. In providing the aforementioned services, Defendant employed hourly, non-exempt employees with a number of job titles, including, but not limited to, Customer Service Representative, Client Service Associate, Associate Client Support Consultant, Client Support Specialist, Client Support Consultant, HCM Service Consultant, NAS HCM Service Consultant II, (hereinafter collectively referred to as "Representatives"). Defendant employed its Representatives in brick-and-mortar contact centers and remotely throughout the United States. Defendant relied heavily on Representatives to communicate with Defendant's clients, respond to inquiries, requests and complaints, resolve issues, train defendant's clients' users on ADP's technology, and document and log information concerning those interactions in Defendant's systems.

4. Defendant employed Plaintiff as an hourly non-exempt Representative.

---

[1] *See* https://www.adp.com/ (last visited September 1, 2026).
[2] *See* https://www.adp.com/about-adp.aspx (last visited September 1, 2026).

5. Defendant has employed hundreds of Representatives over the past three years to provide customer service support to its clients.

6. Regardless of the specific job title, all Representatives: (1) were paid on an hourly basis; (2) classified as non-exempt employees; (3) regularly worked forty (40) or more hours per workweek; (4) used the same timekeeping system; (5) used many (if not all) of the same computer programs; (6) were subject to the same relevant timekeeping and attendance policies; and (7) had the primary job duty of providing assistance to Defendant's clients.

7. The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's Representatives, are homogenous; in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses that are prevalent in the industry.[3]

8. One of those abuses, which is occurring in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*. at p. 2.

9. More specifically, DOL's Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift and post-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working

[3] *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), https://www.dol.gov/agencies/whd/fact-sheets/64-flsa-call-centers (last visited September 1, 2026).

in call centers includes starting the computer to download work instructions, computer applications, and work-related emails." *Id*. Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id.*

10. Throughout their employment with Defendant, Plaintiff and other Representatives were required to work substantial amounts of uncompensated, off-the-clock time as part of their job duties.

11. Defendant violated the FLSA and common law by systematically failing to compensate its Representatives for work tasks completed before and after their scheduled shifts, which resulted in Representatives not being paid for all overtime hours worked, overtime gap time when associated with unpaid overtime, and in non-overtime workweeks for regular hours.

12. More specifically, Defendant failed to compensate its Representatives for the substantial time they spent performing essential work tasks prior to and after their scheduled shift start and end times each shift.

13. Additionally, Defendant failed to compensate Plaintiff and Representatives at the appropriate overtime rate using the FLSA's "regular rate" calculation. More specifically, Defendant failed to include non-discretionary remuneration paid to Plaintiff and Representatives in calculating their correct overtime premiums as required by the FLSA. 29 C.F.R. §§778.108-109. Instead,

Defendant only paid Plaintiff and Representatives an overtime premium calculated from their base hourly rates.

14. Plaintiff seeks a declaration that her rights, and the rights of the putative Collective and Class members, were violated, a judgment awarding them unpaid back wages, liquidated damages, attorneys' fees and costs to make them and the putative Collective and Class whole for damages they suffered, and any other remedies to which they are entitled, and to help ensure Defendant will not subject future workers to the same illegal conduct in the future.

## PARTIES

15. Plaintiff is a resident of Tempe, Arizona. Plaintiff works for Defendant as an hourly, non-exempt hybrid NAS HCM Service Consultant II from approximately April 2022 through the present. Defendant compensates Plaintiff through the payment of an hourly rate most recently at $28.80 per hour. Plaintiff signed a consent to join this collective action, which is attached as **Exhibit A**.

16. Additional, putative collective members were or are employed by Defendant throughout the United States as non-exempt Representatives during the past three years and their consent to join forms will also be filed in this case.

17. Defendant ADP, Inc., is a Delaware corporation, with its principal office located at 1 ADP Boulevard, Roseland, New Jersey 07068.

18. Upon information and belief, Defendant may be served with process through its registered agent for service of process, C T Corporation System, 820 Bear Tavern Rd., West Trenton, New Jersey 08628.

## JURISDICTION AND VENUE

19. This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq*.

20. Additionally, this Court has jurisdiction over Plaintiff's collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

21. Plaintiff's state law claims originate from the same facts that form the basis of her federal claims. Thus, the Court also has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367.

22. Defendant's annual sales exceed $500,000 and it has more than two employees, therefore the FLSA applies in this case on an enterprise basis. Defendant's employees engaged in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

23. This Court has personal jurisdiction over Defendant because it conducts business within the State of New Jersey, employs individuals within the State of

New Jersey, and maintains its principal place of business within the State of New Jersey.

24. Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b) and (c) because Defendant's principal place of business is located in this District and a substantial portion of the events that give rise to the Plaintiff's claims occurred in this District.

## GENERAL ALLEGATIONS

25. Prior to hiring prospective Representatives, including Plaintiff, Defendant provided them with a written offer setting forth the job title, the offered rate of pay, and the conditions of their employment.

26. Upon information and belief, Defendant maintained documents demonstrating the promised hourly wage for each Representative, including, but not limited to: offer letters, paystubs, and/or payroll records.

27. Plaintiff and the Representatives received offer letters from Defendant to work as Representatives, and they accepted Defendant's offers with the understanding that their base hourly rate would be paid for all hours worked.

28. Plaintiff and the Representatives performed under their respective agreements with Defendant carrying out their job duties and responsibilities. More specifically, Plaintiff and the Representatives fielded inbound calls and made outbound calls to Defendant's clients; provided client support; handled and resolved

escalated inquiries, issues, and complaints and offered appropriate solutions to the same; trained defendant's clients' users on ADP's technology, and maintained records of client interactions. Plaintiff and the Representatives additionally performed the required unpaid off-the-clock work explained below.

29. Defendant paid its Representatives at varying hourly rates.

30. In addition, to the base rate of pay, Defendant incorporates various types of routine and non-discretionary pay into its compensation structure, including but not limited to, "Erec Eer Tax, Gift Certif, Mymoment, Mymomentx" pay (hereinafter referred to as "Incentive pay").

31. Throughout Plaintiff's employment with Defendant, she and Defendant's Representatives have earned Incentive pay and other non-discretionary remuneration.

32. As non-exempt employees, Defendant's Hourly Employees are entitled to full compensation for all overtime hours worked at a rate of 1.5 times their "regular rate" of pay.

33. Throughout Plaintiff's employment with Defendant, Defendant has failed to properly calculate Plaintiff's Shift Premium pay and other non-discretionary remuneration into the regular rate for proper overtime calculation.

34. Plaintiff and Defendant's Representatives typically worked five (5) days each week and up to, and on occasion more than, forty (40) hours per week.

35. There were one or more instances during Plaintiff's employment when she worked forty (40) hours or more in a workweek.

36. Defendant provided training to Representatives, like Plaintiff, on, *inter alia*, how to carry out their day-to-day job duties, including how to load and log into their computer programs at the beginning of the shift and how to log out at the end of each shift; how to track their time in Defendant's timekeeping system; attendance, schedule and call quality expectations; and Defendant's policies related to each topic. The training that Defendant's Representatives received was substantially, if not entirely, the same, and Defendant's Representatives, including Plaintiff, were subject to the same relevant policies and procedures.

37. To the extent that Defendant had written policies that required its employees to be paid for all hours worked, including overtime, the reality is that Defendant did not follow these policies, which resulted in Representatives, like Plaintiff, not being paid for all hours worked, including the off-the-clock work described herein.

38. At all relevant times, Defendant controlled Plaintiff's and all other Representatives' work schedules, duties, protocols, applications, assignments, and employment conditions.

39. Defendant required Plaintiff and all other Representatives to use a computer and a variety of integral and indispensable computer programs,

applications, and servers that were necessary to the performance of their job duties.

40. Defendant instructed Plaintiff and all other Representatives to be "On Queue" the moment their scheduled shift started. This required Plaintiff and the Representatives to load and log into essential work-related computer programs and applications ***before*** the start of their shifts and ***before*** they were allowed to clock in so they could be prepared to field calls the moment their shift began.

41. Defendant enforced these policies through its uniform attendance, compensation, timekeeping, and schedule adherence procedures applicable to the Representatives.

42. Defendant additionally enforced its policy of requiring that all computer programs and applications be open and ready at the start of a Representative's scheduled shift through its schedule adherence and attendance metrics pursuant to which it monitored the Representatives' clock in times in relation to their start-of-shift times, as well as the time Representatives went into a "On Queue" status.

43. Representatives were routinely evaluated and at times disciplined for failure to comply with Defendant's expectations. This discipline included, but was not limited to, written warnings, verbal warnings, coaching, and termination.

44. All of Defendant's Representatives used the same or similar computer networks, software programs, and applications in the course of performing their job

responsibilities. These programs and applications were an integral and indispensable part of the Representatives' work, and they could not perform their jobs without them.

45. Thus, Defendant required Plaintiff and its Representatives to perform the boot-up and login process before the start of their shifts and before they were allowed to clock in.

46. Similarly, Defendant's Representatives, including Plaintiff, performed work off-the-clock after their scheduled shifts, after logging out of Defendant's timekeeping system, when they shutdown/logged out of the programs and applications that they utilized during their shifts.

47. At all relevant times, Defendant used its attendance and adherence policies against Plaintiff and the Representatives to require them to perform pre- and post-shift work off-the-clock.

48. The pre- and post-shift off-the-clock time Plaintiff and all other Representatives spent booting up/logging into and shutting down their computers and applications and programs directly benefited Defendant and was integral and indispensable to the Representatives' job responsibilities.

49. As a result of the off-the-clock work described herein, Plaintiff and all other Representatives were unlawfully deprived of approximately twenty (20) to forty-two (42) minutes of compensation every day.

50. At all relevant times, Defendant was able to track the amount of time Plaintiff and other Representatives spent in connection with the pre- and post-shift activities; however, Defendant failed to do so and failed to compensate Plaintiff and all other Representatives for the off-the-clock work they performed, thus breaching it agreements with its Representatives.

51. Defendant knew or should have known that Plaintiff and other Representatives were performing this pre- and post-shift work, as it was required by Defendant's training and policies and was necessary for Representatives to perform their primary job duties.

52. Despite knowing Plaintiff and all other Representatives performed the pre- and post-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

53. At all relevant times, Defendant required and directly benefited from the off-the-clock work performed by Plaintiff and all other Representatives in connection with the pre- and post-shift activities described herein.

54. Indeed, in light of the explicit and long-standing DOL guidance cited above, there is no conceivable way for Defendant to establish that it acted in good faith.

55. Defendant has known or should have known that the time spent by Plaintiff and other Representatives in connection with the pre- and post-shift

activities is compensable under the law.

56. Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiff and all other Representatives booted up and logged into their computers each shift, along with the time they logged into the timekeeping system.

57. Because Defendant required its Representatives, including Plaintiff, to perform pre- and post-shift work off-the-clock, the hours tracked in Defendant's timekeeping system are an inaccurate representation of the total amount of time Representatives spent working for Defendant. Thus, the hours reflected on the Representatives' paystubs are also inaccurate representations of the hours they actually worked.

58. Defendant's failure to pay Plaintiff and its Representatives for each hour of work performed and that was required of them as Representatives was a material breach by Defendant.

59. Plaintiff and all other Representatives earned these wages the moment they performed the off-the-clock work, and the wages were due to be paid to Plaintiff and all other Representatives no later than the pay day for the period in which the off-the-clock work was performed.

60. Despite the fact that Plaintiff and all other Representatives performed off-the-clock work pre- and post-shift, these off-the-clock hours were not peripheral

tasks for which they were not owed compensation. Instead, the off-the-clock hours, which were performed by Plaintiff, and all other Representatives pursuant to not only their agreements with Defendant, but Defendant's verbal and/or written policies, training and direction, constituted principal work activities that were integral and indispensable to their work, and Defendant was contractually obligated to compensate its Representatives for their hours worked at their applicable regular and overtime hourly rates at which they were employed.

**A. <u>Pre-Shift Off-the-Clock Work</u>**

61. Upon arriving to their computer, Defendant's Representatives were trained and required to follow a specific protocol to start up and log into Defendant's network and numerous software programs to access the necessary information to perform their job duties.

62. Before each shift, Representatives were required to undertake essential work tasks, which generally consisted of the following steps: turning on their computer; logging into Microsoft Windows with a username and password; connecting to Defendant's virtual private network ("VPN") with a username and password and dual authentication; and opening various programs and applications that were integral and indispensable to their job duties as Representatives, including, but not limited to, Microsoft OneNote, Microsoft Outlook, Workforce Now, and the Sales system.

63. The boot-up process at Defendant's brick-and-mortar locations were substantially the same, except Representatives, including Plaintiff, generally were not required to connect to the VPN when working onsite. However, if an onsite computer failed to connect to Defendant's network or security systems, Plaintiff and the Representatives could still be required to connect through the VPN.

64. Only once all applications were open and loaded, could Plaintiff and the Representatives clock in on the time clock application on their phones.

65. Defendant's Representatives had to complete much, if not all, of this process ***before***: (1) the start of their scheduled shifts; (2) they were allowed to log into Defendant's phone program and place themselves in "On Queue"; and (3) fielding calls.

66. The boot-up and login process described above took Plaintiff and the Representatives substantial time on a daily basis, ranging from ten (10) to thirty (30) minutes per shift or more, depending on how fast/slow the computers, systems and programs were operating, and occurred before the start of their scheduled shifts.

67. Defendant's Representatives were not compensated for all of this time because, among other things, Defendant prohibited Representatives from clocking into their timekeeping software until a limited and finite number of minutes before the start of their scheduled shifts, and the boot-up and process took longer than this amount of time to perform each shift.

68. The pre-shift off-the-clock work Representatives performed directly benefited Defendant and was integral and indispensable to their job duties and responsibilities as Representatives.

69. Thus, in workweeks where Defendant's Representatives worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, Defendant violated the FLSA by failing to: (1) pay them the federally mandated overtime compensation for all work performed; (2) pay them straight time for all regular hours worked up to forty (40) (overtime gap time); and (3) record all of the time that their Representatives, including Plaintiff, worked for Defendant's benefit.

70. If Representatives started logging in immediately prior to their scheduled shifts, they were in danger of clocking in late because they could not complete the required pre-shift boot-up and login process necessary to be "On Queue" when their scheduled shifts began and it was time clock in, which negatively impacted their attendance and schedule adherence scores.

71. Because Defendant's Representatives typically worked scheduled shifts of at least forty (40) hours per week, their required pre-shift work was nearly always overtime work, compensable at 1.5 times their regular rate of pay.

72. Defendant had express and constructive knowledge that its

Representatives began the pre-shift boot-up and login process while off-the-clock in order to make sure they were "available" and clocked in on time.

73. As explained herein, Defendant's policies and practices prohibited its Representatives from recording all hours worked.

74. The pre-shift off-the-clock work Representatives performed directly benefited Defendant and was integral and indispensable to their job duties and responsibilities.

**B. <u>Post-Shift Off-the-Clock Work</u>**

75. Pursuant to Defendant's policies, training, and direction, Plaintiff and all other Representatives were required to clock out the moment they finished fielding their last customer call for the shift and before closing programs and applications they used during their scheduled shift, and shutting down their system and turning off their computers.

76. The post-shift log-out and shutdown process took Plaintiff and the Representatives substantial time on a daily basis ranging from five (5) to seven (7 minutes per shift and occurred after the end of their scheduled shifts.

77. Thus, in workweeks where Defendant's Representatives worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, Defendant violated the FLSA by failing to: (1) pay them the federally

mandated overtime compensation for all work performed; (2) pay them straight time for all regular hours worked up to forty (40); and (3) record all of the time that their Representatives, including Plaintiff, worked for Defendant's benefit.

78. The post-shift off-the-clock work Plaintiff and other Representatives performed was compensable, directly benefited Defendant, and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to the Representatives' job duties and responsibilities.

### C. The Off-the-Clock Work Results in Viable "Gap Time" Claims

79. "There are two types of gap time claims: pure gap time claims – when an employee has not worked more than 40 hours in a workweek and seeks compensation for unpaid hours – and overtime gap time claims – when an employee has worked more than 40 hours in a workweek but nevertheless has not been paid for all of the regular-time hours that she worked at the regular wage rate." *Athan v. United States Steel*, 354 F. Supp. 3d 748, 754 (E.D. Mich. 2019).

80. Plaintiff, and similarly situated Representatives, regularly worked non-overtime hours (i.e., "gap time") for which they were not paid.

81. During the weeks that Representatives did not work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices was a deprivation of straight-time wages, in breach of Defendant's contracts with its Representatives.

**D. Plaintiff's Exemplary Workweek**

82. The FLSA violations discussed herein occurred throughout Plaintiff's employment with Defendant; however, as an example of one pay period where Defendant failed to pay Plaintiff regular wages for work performed and overtime for hours worked in excess of forty (40) hours (as mandated by the FLSA), Plaintiff provides her paystub for the pay period of November 3, 2025 – November 16, 2025:

- Plaintiff worked more than 40 hours in one or more workweeks at an overtime rate of $39.27 per hour and upon information and belief was paid $39.27 per hour in overtime.

- With pre- and post-shift off-the-clock work, Plaintiff should have been paid an additional 20 to 42 minutes per shift at her overtime rate of $39.27 for each hour worked in excess of forty (40) in the workweek(s0 in which she worked overtime.

**Ex. B**, Moore 11/3/25 – 11/16/25 Earnings Statement.

**E. The Regular Rate of Pay**

83. Under FLSA, the regular rate is the "keystone" to calculating the correct overtime rate. *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419 (1945). It is "the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed." 29 C.F.R. § 778.108.

84. No matter how an employee is paid—whether by the hour, by the piece, on commission, or on a salary—the employee's compensation must be converted to an equivalent hourly rate from which the overtime rate can be calculated. 29 C.F.R. § 778.109. "The regular hourly rate of pay is determined by dividing the employee's

total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by the employee in that workweek for which such compensation was paid." *Id.*

*85.* There is a statutory presumption that remuneration in any form must be included in the regular rate calculation. Defendant carries the burden to establish that any payment should be excluded. *Acton v. City of Columbia, Mo*., 436 F.3d 969, 976 (8th Cir. 2006) (citing *Madison v. Resources for Human Dev. Inc.*, 233 F.3d 187 (3rd Cir. 2000)). Thus, determining the regular rate starts from the premise that all payments made to Defendant's Representatives for work performed are included in the base calculation unless specifically excluded by statute.

*86.* Defendant's Incentive pay and other non-discretionary remuneration do not fall within any of the statutory exclusions from the regular rate as provided in 29 U.S.C. §§ 207(e)(1)-(8).

*87.* Once the total amount of an employee's "regular" compensation is deduced, "the determination of the regular rate becomes a matter of mathematical computation." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 425 (1945). The regular rate must be expressed as an hourly rate because, although any method of compensating an employee is permitted, the FLSA imposes its overtime requirements in terms of hourly wages. Thus, if necessary, an employer must convert an employee's wages to an hourly rate to determine compliance with the statute.

88. Plaintiff's "total remuneration" includes not only her base hourly pay, but also any Incentive pay and other non-discretionary remuneration. Indeed, 29 C.F.R. § 548.502 expressly provides that "[e]xtra overtime compensation must be separately computed and paid on payments such as bonuses or shift differentials which are not included in the computation of the established basic rate…."; *see also* 29 C.F.R. § 778.207(b) (Under FLSA, the regular rate of pay must consist of all forms of remuneration including non-discretionary bonuses and "such extra premiums as night shift differentials… and premiums paid for hazardous, arduous, or dirty work.").

*89.* However, Defendant has failed to incorporate Incentive pay and other non-discretionary remuneration into its Representatives' regular hourly rate calculation, resulting in *prima facie* violations of the FLSA.

90. Consistent with Section 7(a) of the Fair Labor Standards Act, Plaintiff and all other Representatives are and have been entitled to overtime pay equal to 1.5 times their regular rate of pay for hours worked in excess of forty (40) hours per week.

91. Plaintiff and all other Representatives regularly work in excess of forty (40) hours a week and have been paid some overtime for those hours but at a rate that did not include Defendant's Incentive pay and other non-discretionary remuneration as required by the FLSA.

92. For example, **Ex. B**, Plaintiff's paystub for the pay period November 3, 2025, through November 16, 2025, shows 80.95 hours of work, a base hourly rate of $26.18 and an overtime rate of $39.27 (1.5 times the base rate), and gross earnings of $2,171.23 inclusive of $39.00 in Incentive pay. However, Defendant failed to include the Incentive pay in the overtime rate calculation and, therefore, violated the FLSA.

93. Defendant paid Plaintiff, and all other Representatives, additional non-discretionary remuneration that Defendant failed to include in the regular rate calculation.

94. To the extent that any of Defendant's premium compensation paid to Plaintiff and all other Representatives, could be qualified and applied as a credit under 29 U.S.C. §§ 207(h), those credits may only be applied to the same workweek or work period in which the premiums were paid. *Herman v. Fabri-Centers of Am., Inc.*, 308 F. 3d 580, 590-92 (6th Cir. 2002).

95. In a Department of Labor Opinion Letter dated December 23, 1985, the Deputy Administrator stated: "We wish to point out that the surplus overtime premium payments, which may be credited against overtime pay pursuant to section 7(h) of [the] FLSA, may not be carried forward or applied retroactively to satisfy an employer's overtime pay obligation in future or past pay periods." *Opinion Letter Fair Labor Standards Act* (FLSA), 1985 WL 304329 at *3 (1985).

96. As a result of its *prima facie* FLSA violations, Defendant is liable to Plaintiff and all other Representatives for unpaid wages, liquidated damages, reasonable attorney's fees and costs, interest, and any other relief deemed appropriate by the Court.

## FLSA COLLECTIVE ACTION ALLEGATIONS

97. Pursuant to 29 U.S.C § 216(b), Plaintiff brings this action on behalf of:

> ***All current and former hourly Representatives who work or have worked for Defendant at any time during the past three years preceding the filing of this Complaint up through and including judgment.***

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

98. Defendant is liable under the FLSA, for *inter alia*, failing to properly compensate Plaintiff and others similarly situated.

99. Excluded from the proposed FLSA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside salespersons.

100. Consistent with Defendant's policies and practice, Plaintiff and the proposed FLSA Collective were not paid for all straight and premium overtime compensation in workweeks during which they worked forty (40) hours or more when considering the uncompensated off-the-clock work discussed herein.

101. All of the work Plaintiff and the proposed FLSA Collective performed was assigned by Defendant, and/or Defendant was aware of all of the work Plaintiff and the proposed FLSA Collective performed.

102. Defendant was aware, or should have been aware, that federal law required it to pay Plaintiff and the proposed FLSA Collective members for all hours worked and an overtime premium for all hours worked in excess of forty (40) per workweek.

103. As part of its regular business practice, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

a. Willfully failing to pay its employees, including Plaintiff and the FLSA Collective members, premium overtime wages for hours worked in excess of forty (40) hours per workweek;

b. Willfully failing to pay its employees, including Plaintiff and the FLSA Collective members, for all overtime gap time; and

c. Willfully failing to record all of the time that its employees, including Plaintiff and the FLSA Collective members, have worked for the benefit of Defendant.

d. Willfully failing to include all non-discretionary bonuses, incentive pay or other remuneration into the required regular rate calculation.

104. Defendant's unlawful conduct has been widespread, repeated, and consistent.

105. A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

106. The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issue — whether the amount of uncompensated pre- and post-shift off-the-clock work — does not vary substantially among the proposed FLSA Collective.

107. Plaintiff estimates the FLSA Collective, including both current and former Representatives over the relevant period, includes hundreds, if not thousands, of members. The precise number should be readily available from a review of Defendant's personnel and payroll records.

108. Upon information and belief, Defendant utilized a centralized payroll system which calculated overtime pay for all similarly situated employees in the same or similar manner.

109. These similarly situated individuals are known to the Defendant, are readily identifiable, and can be located through Defendant's payroll records, which Defendant is required to maintain pursuant to the FLSA. 29 U.S.C. § 211(c); 29 C.F.R. § 516*et seq*.

110. The FLSA Collective should be notified of this action and allowed to opt-in pursuant to 29 U.S.C. § 216. Unless, the Court promptly issues such notice, the FLSA Collective members, who were lawfully deprived of pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which Defendant unlawfully withheld from them.

**RULE 23 ARIZONA STATE LAW CLASS ALLEGATIONS**

91. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of himself and on behalf of:

> ***All current and former similarly situated Representatives who work or have worked for Defendant at any time in Arizona during the applicable statutory period*.**

(hereinafter referred to as the "Rule 23 Arizona Class"). Plaintiff reserves the right to amend this definition if necessary.

92. The members of the Rule 23 Arizona Class are so numerous that joinder of all members in this case would be impractical. Plaintiff reasonably estimates there are hundreds of Rule 23 Arizona Class members. Rule 23 Arizona Class members

should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

93. There is a well-defined community of interests among Rule 23 Arizona Class members and common questions of law and fact predominate in this action over any questions affecting individual members. These common legal and factual questions, include, but are not limited to, the following:

a. Whether the pre-shift time Rule 23 Arizona Class members spent on startup and login activities each shift is compensable time under applicable law;

b. Whether the post-shift time Rule 23 Arizona Class members spent closing all programs, applications, and networks is compensable time under applicable law;

c. Whether Defendant engaged in a policy or practice of failing to pay each Rule 23 Arizona Class member regular wages or minimum wage for each non-overtime hour worked;

d. Whether the Rule 23 Arizona Class members are owed wages for time spent performing pre- and post-shift work activities, and if so, the appropriate amount thereof; and

e. Whether Defendant should be required to pay compensatory damages, attorneys' fees, penalties, costs, and interest for violating Arizona state wage acts, AMWA and AWPA.

94. Plaintiff's claims are typical of those of the Rule 23 Arizona Class members in that they and all other Rule 23 Arizona Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies and

practices, promises and course of conduct as all other Rule 23 Arizona Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Arizona Class members.

95. Plaintiff will fully and adequately protect the interests of the Rule 23 Arizona Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Arizona Class members.

96. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Arizona Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

97. This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

98. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("[b]y its terms [Rule 23] creates a categorical rule

entitling a plaintiff whose suit meets the specified criteria to pursue her claim as a class action").

99. Because Defendant has acted and refused to act on grounds that apply generally to the Rule 23 Arizona Class and declaratory relief is appropriate in this case with respect to the Rule 23 Arizona Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**<u>RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS</u>**

92. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of herself and on behalf of:

> ***All current and former hourly Representatives who work or have worked for Defendant at any time during the applicable statutory period.***

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition if necessary.

93. The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds or thousands of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

94. There is a well-defined community of interests among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions include, but are not limited to, the following:

a. Whether the pre-shift time Rule 23 Nationwide Class members spent on startup and login activities each shift is compensable time under applicable law;

b. Whether the post-shift time Rule 23 Nationwide Class members spent closing all programs, applications, and networks is compensable time under applicable law;

c. Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract; and

d. Whether Defendant's non-payment of wages for all compensable time resulted in an unjust enrichment to Defendant.

95. Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that she and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises, and course of conduct as all other Rule 23 Nationwide Class members' claims, and their legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

96. Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

97. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

98. This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

99. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

100. Because Defendant has acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**VIOLATIONS OF THE FAIR LABOR STANDARDS ACT,**
**29 U.S.C. § 201, *et seq*. -- FAILURE TO PAY OVERTIME**

101. Plaintiff re-alleges and incorporates all previous paragraphs herein.

102. At all times relevant to this action, Defendant was subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*.

103. At all times relevant to this action, Defendant was engaged in interstate commerce or in the production of goods for commerce, as defined by the FLSA.

104. At all times relevant to this action, Plaintiff and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

105. At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

106. Plaintiff and other FLSA Collective members, by virtue of their job duties and activities actually performed, were all non-exempt employees.

107. Plaintiff either: 1) engaged in commerce; 2) engaged in the production

of goods for commerce; or 3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

108. The FLSA requires an employer to pay employees for all hours worked at the federally mandated overtime premium rate of 1.5 times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

109. The Fair Labor Standards Act and its implementing regulations require that the regular rate of pay include all forms of remuneration. Section 207(e) outlines eight exceptions where payments to employees may not be included in the regular rate. Defendant's Incentive pay and other non-discretionary remuneration do not fall into any of those exceptions.

110. Defendant has failed to include Incentive pay and other non-discretionary remuneration into the regular rate of pay for Plaintiff and all others similarly situated when calculating overtime rates. The failure to include this remuneration in overtime computations violates Section 7(a) of the FLSA, because Defendant's Hourly Employees have worked overtime without being paid the statutorily required rates. 29 U.S.C. § 207(a).

111. As a result of Defendant's willful failure to compensate Plaintiff and the putative collective members at a rate not less than 1.5 times the regular rate of pay for work performed in excess of forty (40) hours in a

workweek, Defendant violated and continues to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including but not limited to 29 U.S.C. §§ 207(a)(1) and 215(a), and 29 C.F.R. § 778.104. Defendant's conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

112. The FLSA requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq*.

113. At all times relevant to this action, Defendant engaged in an unlawful policy and practice of requiring Plaintiff and all the FLSA Collective members to work off-the-clock every shift, and failed to pay these employees overtime gap time in weeks where it occurred and the federally mandated overtime compensation for all work performed over forty (40) hours per week.

114. The off-the-clock work performed every shift by Plaintiff and the proposed FLSA Collective was an essential part of their jobs and these activities, and the time associated with these activities was significant.

115. In workweeks where Plaintiff and other FLSA Collective members worked forty (40) hours or more, the uncompensated off-the-clock work should have been paid at the federally mandated rate of 1.5 times each employee's regular rate of pay. 29 U.S.C. § 207. Further, all "overtime gap time" should have been paid at

Plaintiff and the FLSA Collective's regular hourly rate.

116. Defendant's violations of the FLSA were knowing and willful. Defendant could have easily accounted for and properly compensated Plaintiff and the proposed FLSA Collective members for all work activities but did not.

117. As a result of the foregoing, Plaintiff was injured and seeks appropriate relief against Defendant including unpaid wages (including unpaid overtime), an additional equal amount in liquidated damages (double damages), reasonable attorneys' fees and costs, interest, and all other relief just and appropriate under the circumstances.

**COUNT II**
**RULE 23 ARIZONA CLASS ACTION**
**VIOLATION OF THE ARIZONA MINIMUM WAGE ACT,**
**A.R.S. §§ 23-363, *et seq.* ("AMWA"),**
**THE ARIZONA WAGE PAYMENT ACT,**
**A.R.S. §§ 23-350, *et seq.* ("AWPA") ("ARIZONA WAGE ACTS")**

118. Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

119. At all times relevant to the action, Defendant was an employer covered by the overtime and wage mandates of The Arizona Minimum Wage Act ("AMWA"), A.R.S. §§ 23-363, *et seq.*, and the Arizona Wage Payment Act ("AWPA"), A.R.S. §§ 23-350, *et seq.*, and Plaintiff and the Rule 23 Arizona Class are and/or were employees entitled to the protections of both statutes.

120. The AWPA requires employers to pay employees compensation for

every hour worked in a workweek. *See* A.R.S. §§ 23-350(5), 23-351(C), 23-355(A).

121. The AMWA requires employers to pay employees at least the applicable minimum wage for all hours worked, A.R.S. § 23-363(A), and overtime compensation calculated at time-and-a-half of their regular rate of pay for each hour worked each week in excess of forty (40). A.R.S. § 23-391; 29 U.S.C. § 207.

122. A.R.S § 23-355(A) provides that "if an employer, in violation of this chapter, fails to pay wages due any employee, the employee may recover in a civil action against an employer or former employer an amount that is treble the amount of the unpaid wages."

123. A.R.S. § 23-364(D) requires employers to retain payroll records showing the hours worked for each day worked, and the wages paid to all employees for a period of four years and that a "[f]ailure to do so shall raise a rebuttable presumption that the employer did not pay the required minimum wage rate[.]"

124. A.R.S. § 23-364(F) provides that "any employer who violates recordkeeping …requirements…shall be subject to a civil penalty of at least $250 dollars for a first violation, and at least $1000 dollars for each subsequent or willful violation…"

125. Defendant violated the Arizona Wage Acts by regularly and repeatedly failing to compensate Plaintiff and the Rule 23 Arizona Class for the time spent on the off-the-clock work activities described in this Complaint.

126. Defendant also violated the AMWA by failing to maintain required payroll records accurately reflecting the hours Plaintiff and the Rule 23 Arizona Class worked for Defendant.

127. Defendant's uniform policy and practice, as described above, was/is willful, intentional, unreasonable, arbitrary, and in bad faith.

128. As a result, Plaintiff and the Rule 23 Arizona Class have and will continue to suffer loss of income and other damages. Accordingly, Plaintiff and the Rule 23 Arizona Class are entitled to recover unpaid wages owed, liquidated damages, costs and attorneys' fees, and other appropriate relief under the Arizona Wage Acts at an amount to be proven at trial.

**COUNT III**
**RULE 23 NATIONWIDE CLASS ACTION**
**NATIONWIDE BREACH OF CONTRACT**

129. Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

130. At all times relevant to this action, Defendant had a binding and valid contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on behalf of Defendant.

131. Evidence of these contracts includes Defendant's letters offering employment, pay statements, and other documentary evidence in Defendant's possession. Additionally, Defendant made verbal offers for payment at a specified, above minimum wage for Representative work, which Plaintiff accepted and performed, but Defendant failed to perform by paying Plaintiff and the Rule 23 Class the promised wages.

132. For example, Defendant offered to compensate Plaintiff at a minimum of $14.00 per hour if she agreed to perform services for Defendant as a Representative. Plaintiff accepted Defendant's offer and performed her duties as a Representative in reliance on the offer.

133. Defendant breached its contractual promises by failing to pay Representatives at their fixed, pre-agreed-upon hourly rate for *all* of the hours worked. This time includes hours worked before Plaintiff and the Rule 23 Nationwide Class reached forty (40) hours per week and at a rate that averaged out to more than the applicable minimum wage.

134. Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff, were contractually entitled to varying minimum hourly rates within the applicable period.

135. Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer letters

and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre- and post-shift work described herein.

136. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work described herein, Defendant systematically breached its contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

137. Defendant can easily ascertain the amount of damages owed to Plaintiff and the Rule 23 Nationwide Class members based on the allegations made in this complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Defendant's payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

138. Plaintiff and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (i.e., pure "gap time" claims for non-overtime hours/workweeks).

139. Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Class members spent

performing off-the-clock activities, which is a fundamental part of an "employer's job."

140. As a direct and proximate result of Defendant's contractual breaches, Plaintiff and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

**COUNT IV**
**RULE 23 NATIONWIDE CLASS ACTION**
**NATIONWIDE UNJUST ENRICHMENT**

141. Plaintiff re-alleges and incorporates all previous paragraphs herein.

142. This Count is pled in the alternative to Count III, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

143. At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for the benefit of Defendant.

144. Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

145. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

146. Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

147. Defendant received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

148. Despite this, Defendant did not pay Plaintiff and the Rule 23 Nationwide Class for all hours worked, including work performed in workweeks in which they worked fewer than, but not reaching, forty (40) hours per week, and at a rate that averaged out to more than the applicable minimum wage.

149. Upon information and belief, Defendant used the monies owed to Plaintiff and every other Rule 23 Nationwide Class member to finance its various business ventures or pay its equity owners.

150. Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

151. Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort, and their resources in a profitable manner.

152. As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, requests the following relief:

a. An Order certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b. An Order certifying this action as a class action (for the Rule 23 Arizona Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's Arizona state law claims (Count II);

c. An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's breach of contract claim (Count II);

d. An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff' unjust enrichment claim (Count III);

e. An Order compelling Defendant to disclose in computer format, or in print if no computer-readable format is available, the names, addresses, phone numbers, and e-mails of all proposed FLSA Collective members and Rule 23 Nationwide Class members, and authorizing Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class and collective members of their rights by law to join and participate in this lawsuit;

f. An Order designating Plaintiff as representative of the FLSA Collective, the Rule 23 Arizona Class, and the Rule 23 Nationwide Class, and undersigned counsel as Class counsel for the same;

g. An Order declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

h. An Order declaring Defendant's violations of the FLSA were willful;

i. An Order declaring Defendant violated Arizona state wage and hour laws and regulations cited herein;

j. An Order declaring Defendant breached its contracts with Plaintiff and the members of the Rule 23 Nationwide Class by failing to pay them for each hour they worked at a pre-established (contractual) regular hourly rate;

k. An Order declaring Defendant was unjustly enriched by the off-the-clock work performed by Plaintiff and the members of the Rule 23 Nationwide Class;

l. An Order granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff, the FLSA Collective and the Rule 23 Nationwide Class the full amount of damages and liquidated damages available by law;

m. An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

n. An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

o. An Order awarding such other and further relief as this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demands trial by jury on all issues in this Complaint that are so triable as a matter of right.

Date: September 15th, 2026 Respectfully submitted,

*/s/ Achchana Ranasinghe*
Achchana Ranasinghe (087282014)
**BROWN, LLC**
111 Town Square Place, Suite 400
Jersey City, NJ 07310
(877) 561-0000
ac@jtblawgroup.com

Jason J. Thompson (P47184)*
Kathryn E. Milz (IL 6297213)*
**SOMMERS SCHWARTZ, P.C.**
One Towne Square, 17th Floor
Southfield, Michigan 48076
(248) 355-0300
jthompson@sommerspc.com
kmilz@sommerspc.com

*Attorneys for Plaintiff and the Putative Collective and Class*

**Pro Hac Vice Forthcoming*